UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| RAY LETSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:15-cv-00377-SGC |
| ) | |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| COMMISSIONER, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The plaintiff, Ray Letson, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Mr. Letson timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 14). For the reasons that follow, the Commissioner's decision is due to be affirmed.

**I.    FACTS, FRAMEWORK, AND PROCEDURAL HISTORY**

Mr. Letson was fifty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a ninth grade education. (R. 26-27, 175).

His past work experience includes various construction jobs and self-employment as a carpenter. (R. 28, 175-76, 184-185, 210). Mr. Letson claims he became disabled on June 21, 2012, due to degenerative disc disease, scoliosis, arthritis, bone spurs, and headaches. (R. 174). Mr. Letson alleges he became unable to work following a motorcycle accident on June 21, 2012. (*See* Doc. 10 at 5).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the evaluation stops. *Id*. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the

claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found Mr. Letson had not engaged in SGA since the alleged onset of his disability. (R. 14). At step two, the ALJ found Mr. Letson suffered from the following severe impairments: lumbar and cervical degenerative disc disease. (R. 14). At step three, the ALJ found Mr.

Letson did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments. (R. 14).

Before proceeding to step four, the ALJ determined Mr. Letson had the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), except that he could only occasionally climb, balance, stoop, crouch, kneel, and crawl, and required a sit/walk/stand option at will. (R. 15). In determining Mr. Letson's RFC, the ALJ found his medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the ALJ found Mr. Letson's allegations concerning the intensity, persistence, and limiting effects of his symptoms to be less than entirely credible. (R. 15). In particular, the ALJ found Mr. Letson's credibility was undermined by: (1) analysis of the medical record; (2) the lack of treatment records and the generally conservative medical treatment; and (3) inconsistent statements regarding the disabling impact of pain and self-reported daily activities. (R. 16).

At step four, the ALJ determined Mr. Letson was unable to perform any of his past relevant work. (R. 17). The ALJ noted Mr. Letson was "closely approaching advanced age" and had a "limited education," as those terms are defined by the regulations. (R. 17). Because Mr. Letson's RFC did not allow for the full range of light work, the ALJ took testimony from a vocational expert ("VE"). The ALJ found Mr. Letson could perform jobs such as product marker,

packager, and photo copy operator. (R. 18). The ALJ concluded his decision by finding Mr. Letson was not disabled. (R. 18).

## II.    STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar.*

*Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. DISCUSSION

This appeal contends the Commissioner's decision should be reversed and remanded because the ALJ failed to properly evaluate Mr. Letson's credibility under the Eleventh Circuit's pain standard.  (Doc. 10 at 3).  Specifically, the appeal contends the ALJ erred: (1) in assigning an RFC for limited light work; (2) in relying on the lack of treatment to support the finding that Mr. Letson's allegations of pain were less than fully credible; and (3) in relying on Mr. Letson's daily activities to find he was not disabled.  (Doc. 10 at 4-9).  After setting forth the pain standard, each contention will be addressed in turn.

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms:

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Dyer*, 395 F.3d at 1210 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

An ALJ may discredit a claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Although the Eleventh Circuit does not require explicit findings as to credibility, "the implication must be obvious to the reviewing court." *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" are not required, but the ALJ's credibility determination cannot be a "broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered her medical condition as a whole." *Id*. (internal punctuation omitted). When evaluating whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether [the] ALJ could have reasonably

credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

### A.   RFC for Limited Light Work

Mr. Letson contends the ALJ's RFC finding is not supported by substantial evidence. (Doc. 10 at 4-6). Much of the argument on this point focuses on the ALJ's conclusion that chiropractic records show his condition improved over time. (Doc. 10 at 4-5). In particular, Mr. Letson alleges the ALJ's conclusion relies on isolated treatment notes and does not account for the totality of medical evidence. (Doc. 10 at 4).

As an initial matter, the medical record in this case is sparse. The vast majority of records consists of treatment notes compiled by chiropractors working with Millar Chiropractic,[1] where Mr. Letson sought treatment from July 2012 through September 2012—immediately following his June 2012 motorcycle accident. (R. 213-56). It must be noted that chiropractors are not acceptable medical sources and cannot establish the existence of a medical impairment; nor do chiropractors' opinions qualify as "medical opinions" entitled to special significance. *See* 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1); *Crawford*,

---

[1] The only other records are: (1) a disability determination examination performed by Dr. Marlin Gill, M.D., on December 6, 2012 (R. 257-59); and (2) treatment notes from a visit to Dr. Joel Powell, M.D., on June 25, 2013 (R. 261-63).

363 F.3d at 1160; *see also Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 745 (11th Cir. 2012) ("An ALJ has no duty to give significant or controlling weight to chiropractor's views because. . . a chiropractor is not a 'medical source' who can offer medical opinions").

Even if chiropractic records constituted medical evidence, the ALJ's assessment of Mr. Letson's progress during chiropractic treatment was correct. Mr. Letson's first visit to Millar Chiropractic was on July 2, 2012—eleven days after his motorcycle accident. (R. 254). During that visit, Mr. Letson reported his headaches, neck pain, mid-back pain, lower back pain, and left elbow pain were nine on a ten point scale. (R. 254). While Mr. Letson's symptoms did not improve immediately, the treatment records demonstrate gradual, if halting, improvement in his pain over the next two months. (R. 228-54). By Mr. Letson's final visit on September 26, 2012, he reported neck pain at a one out of ten but otherwise was pain-free. (R. 228). The chiropractor noted that "the pain in the neck has decreased nearly back to normal levels." (R. 228). Accordingly, while not constituting medical evidence or entitled to any special weight, the chiropractic records were accurately described by the ALJ and support his RFC determination.

The other medical evidence of record also contains substantial evidence to support an RFC of limited light work. While the plaintiff reported pain at debilitating levels during his June 2013 visit to Dr. Powell (R. 262), the ALJ found

the objective medical evidence did not support his allegation. Neither Dr. Powell nor Dr. Gill's examinations revealed manifestations to support the level of impairment alleged. (R. 256-59, 261-63). While x-rays of Mr. Letson's spine revealed scoliosis and degenerative disc disease (R. 226-27), "[d]isability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005).

Here, the ALJ found Mr. Letson's contradictory testimony concerning his daily activities undercut his allegations of debilitating pain. (R. 16). Plaintiff testified at the hearing that, during a typical eight-hour day, pain forced him to lie down for six hours. (R. 35). But Mr. Letson also reported: (1) no problem attending to personal hygiene; (2) he is able to care for his pets; and (3) he completes daily chores such as preparing meals, "cleaning, laundry, raking yard, and tak[ing] out the trash." (R. 196-97). Mr. Letson reported going outside daily, riding a bike, driving a car, working on motorcycles, and visiting girlfriends, all without assistance. (R. at 199). When asked in a Function Report how far he could walk before stopping to rest, Mr. Letson stated he could walk a mile. (R. 200). However, during the hearing before the ALJ, Mr. Letson testified that he could only walk "probably 50, 75 feet" before needing to rest. (R. at 34). These inconsistencies led the ALJ to find Mr. Letson's allegations of debilitating pain to

be less than fully credible, and the undersigned finds no error in this credibility determination.

For all of the foregoing reasons, the undersigned concludes the ALJ's RFC determination was supported by substantial evidence. Plaintiff failed to provide objective medical evidence confirming the severity of his alleged symptoms. *See Wilson*, 284 F.3d at 1225-26. Accordingly, the ALJ cannot be said to have been "clearly wrong" in discrediting the plaintiff's testimony. *Werner*, 421 F. App'x at 939.

**B.     ALJ's Reliance on Lack of Medical Treatment**

Mr. Letson asserts the ALJ erred in citing the lack of ongoing medical treatment as a reason for discrediting his allegation of disabling limitations. (Doc. 10 at 7). Mr. Letson cites a Social Security Ruling which provides "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." SSR 96-7p . An example of such an explanation is that the individual is unable to afford treatment and may not have access to free or low-cost medical services. *Id.*

Here, Mr. Letson did testify that he was uninsured, thought he would be unable to afford medical treatment, and was unaware that area clinics would provide treatment to indigent patients at a reduced rate. (R. at 32). Based on these

assertions, Mr. Letson contends his failure to seek treatment was solely a financial issue and should have no bearing on the credibility of his allegations of debilitating pain. (Doc. 10 at 7).

As noted above, the ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225. While the ALJ did cite Mr. Letson's sparse treatment history, this was not his only reason for finding his allegations to be less than fully credible. Indeed, once Mr. Letson did become aware of available medical care that he could afford, the doctor merely prescribed oral medication to treat his symptoms. The ALJ noted this conservative treatment, in addition to Mr. Letson's inconsistent statements regarding the severity of his symptoms. Accordingly, the ALJ's credibility determination is supported by substantial evidence.

### C.    ALJ's Consideration of Mr. Letson's Daily Activities

Mr. Letson contends the ALJ erred in determining his allegations of pain were contradicted by his self-reported daily activities. (Doc 10 at 8). Mr. Letson notes that "participation in everyday activities of short duration, such as housework or fishing" does not preclude a finding of disability. (*Id.*) (*quoting Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997)). Mr. Letson also cites a Third Circuit holding that, "[d]isability does not mean that a claimant must vegetate in a

dark room . . . . [S]poradic or transitory activity does not disprove disability." (Doc. 10 at 8-9) (quoting *Kelly v. Califano*, 637 F.2d 968, 971-72 (3rd Cir. 1981). Mr. Letson also correctly points out, "it is the ability to engage in gainful employment that is key" to a disability determination. (Doc. 10 at 9).

Mr. Letson claims the evidence shows his activities are far more limited than interpreted by the ALJ. (Doc. 10 at 9). However, Mr. Letson does not cite any evidence to support this contention; nor does he expound on the argument. (Doc. 10 at 9). Moreover, the regulations provide that a plaintiff's activities may be used to show that his symptoms are not as limiting as alleged. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *see also Dyer*, 395 F.3d at 1212; *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (when evaluating a claimant's subjective statements, an ALJ may consider any conflicts between claimant's statements and the rest of the evidence). As the ALJ noted in his decision, Mr. Letson's reported daily activities contradict his allegations of disabling pain. This conclusion is supported by substantial evidence and is not grounds for reversal.

## IV.   Conclusion

Upon review of the administrative record and considering all of Mr. Letson's arguments, the court finds the Commissioner's decision is supported by

substantial evidence and in accord with the applicable law.  Accordingly, the Commissioner's decision will be affirmed.  A separate order will be entered.

**DONE** this 23rd day of September, 2016.

/s/ Staci G. Cornelius
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE